Samuel DiFalco, S.
In this accounting proceeding, the trustee requests a construction as to the disposition of one fifth of the principal of the residuary trust. The question is whether the adopted child of the testator’s son comes within the description of ‘ ‘ issue ’ ’ of such child, entitling her to the share of the residuary trust which had been held for her father’s life use, Or whether such share passes to the four surviving children of the testator.
Testator died June 3, 1932. In his will, testator created a trust of his residuary estate and directed the trustee to pay all of the income to his wife during her life. Upon her death the trustee is directed to divide the residuary estate, including the property held in trust, ‘ ‘ into as many equal shares as there shall be children of mine then living and children of mine then deceased leaving issue then living ”. The share of each deceased child is to be paid to his issue and the share of each living child is to be held in further trust for the child’s life. Paragraph seventh provides: “In case of the death of any child of mine for whom one of said equal shares shall be held in trust the respective share so held in trust shall upon such respective death be disposed of as follows: If any such child shall leave issue living at the time of such death the respective share so held in trust shall be transferred and paid over per stirpes *496 and not per capita to said issue. And if in any such case the respective child of mine leaves no issue of him or her surviving, said respective share shall be transferred and paid over per stirpes and not per capita to and among the other children of mine who are living at the time of such death and the issue of any children of mine who at that time be deceased.”
Testator’s wife died February 8, 1960 and five of the children survived her. Two other children had predeceased the wife but left no issue. Following the widow’s death the trust was administered for the benefit of the five children. Robert D. Petty, one of testator’s children died on December 14,1972. He had no natural child but was survived bya daughter whom he had adopted subsequent to testator’s death.
Respondent Richard S. Petty, one of testator’s surviving children, relies upon former section 114 of the Domestic Relations Law to defeat the claim of the adopted child. Section 114 (renumbered 115 in 1938 [L. 1938, ch. 606] and 117 in 1961 [L. 1961, ch. 147, § 1]), which was in existence at the time of testator’s death, provided that the “foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child ’ ’, including the right of inheritance from each other. The statute further recited, however, that “ as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.” This last quoted paragraph, usually called the “precautionary addendum ”, was deleted from section 117 in 1963 (L. 1963, ch. 406, § 1 eff. March 1,1964) and applies only to instruments executed prior to March 1, 1964. (Matter of Snowden, 31 N Y 2d 322, 326, n. 2.)
Respondent Petty contends that in the provision for distribution upon death of a child of testator, the word “ issue ” by operation of section 114 does not include adopted children. The adopted child, however, maintains that under the Court of Appeals decisions (Matter of Park, 15 N Y 2d 413; Matter of Silberman, 23 N Y 2d 98, mot. for rearg. den. 23 N Y 2d 921), the presumption is that testator intended to include adopted children and that where there is a finding of intent to include adopted children, the precautionary addendum is inapplicable (Matter of Upjohn, 304 N. Y. 366).
There are decisions, which support the position of the adopted child that the Park-Silberman presumption in favor of adopted children extends to circumstances in which the so-called ‘ ‘1 pre *497 cautionary addendum ’ ” would otherwise be applicable. (Matter of Hilton, 36 A D 2d 514; Matter of Aldrich, 74 Misc 2d 467; Matter of Henderson, 64 Misc 2d 280.) There are also decisions which hold that the presumption does not so apply. (Matter of Carll, 34 A D 2d 793, affd. 27 N Y 2d 917; Matter of Washburn, 24 A D 2d 83, affd. 17 N Y 2d 895; Matter of Brooks, N. Y. L. J., July 19, 1971, p. 10, col. 7, affd. 39 A D 2d 942, affd. 32 N Y 2d 752; Matter of Pelham, 63 Misc 2d 377; Matter of Strong, 47 Misc 2d 1069; Matter of Clark, N. Y. L. J., April 3, 1973, p. 21, col. 4; Matter of Higgins, N. Y. L. J., April 24, 1973, p. 18, col. 6.) This court had occasion to consider the problem and the various interpretations in Matter of Brown (N. Y. L. J., June 22, 1973, p. 15, col. 1). In Brown, this court analyzed Matter of Park and the more recent decisions including Matter of Snowden (31 N Y 2d 322, supra). This court pointed out that Matter of Park held that the precautionary addendum was not applicable to a situation where the primary remainderman left not only an adopted child but also a natural child. This . court stated that: 1 ‘ The rationale of the decision was that, since the remainderman was survived by a natural child, he did not die without heirs and the statutory restriction, applicable only to a remainderman dying without heirs, was inoperative.” (See, also, Matter of Eagan, 75 Misc 2d 1006.) Brown also discussed Matter of Snowden (31 N Y 2d 322, supra) which was decided basically upon the fact that the settlor of an inter vivos trust had granted the primary remaindermen a general power to appoint the remainder. It was stated in Brown that “ The remainderman of the Snow-den trust had not exercised the power of appointment and the problem before the court was whether the substitutionary gift in default of appointment, to the remainderman’s issue, effectuated a bequest of the remainder to an adopted child of the remainderman. The court found in Snowden that the grant of the general power of appointment was expressive of an intention to permit the adoptee to take the remainder in default of appointment. In so holding the court said that the intention of the grantor was paramount. The opinion stated (31 N. Y. 2d 329-330): ‘ The cases relied upon by the respondents (e.g. Matter of Carll, 27 N. Y. 2d 917; Matter of Wash-burn, 17 N. Y. 2d 895) are clearly distinguishable; they involved wills in which the trust remainder was explicitly limited to the grantor’s “bloodlines” — that is, to his children and their issue — and the life tenants had no power of appointment of any kind. ’ ” After analyzing the cases, this court in Brown *498 reached the conclusion that the ‘ ‘ precautionary addendum of the statute applies only in the absence of some expression of a contrary intent on the part of the grantor of the trust. ‘ It is sufficient if it affirmatively appears from the context of the will or trust and the extraneous facts proper to be considered that the grantor intended to include adopted children ’ (Matter of Rockefeller [Hubbard], 12 N. Y. 2d 124, 134, quoted in Matter of Carll, 34 A D 2d 793, 794).”
It is noteworthy that in Matter of Snowden (38 A D 2d 926) the Appellate Division failed to mention its prior decision in Matter of Hilton (36 A D 2d 514, supra) in which it held that: “The Park-Silberman presumption in favor of adopted children extends to circumstances in which the so-called ‘ precautionary addendum ’ * * * would otherwise be applicable ”. but stated that: “If the decisional law on this subject is to be changed, it is not for this court, but for the Court of Appeals, to make that change.” The Court of Appeals (Matter of Snowden, 31 N Y 2d 322, supra.) in its reversal of the Appellate Division failed to even mention the Park or Silberman decisions. This court therefore may not apply the Park-Silberman presumption since testator’s son, Robert D. Petty had no natural child, but must consider the context of the will — no extraneous facts having been shown — in order to determine whether the testator intended to include adopted children. (Matter of Carll, 27 N Y 2d 917, supra; Matter of Washburn, 17 N Y 2d 895, supra.)
It clearly appears from a reading of the will in this case that the testator explicitly limited the trust remainder to his ‘ ‘ bloodlines ”, that is, to his children and their issue. No basis exists for a finding that testator intended to include adopted children. (Matter of Carll, supra; Matter of Washburn, supra.)
In Matter of Carll (supra) the testator, who had died in 1904, created a preresiduary trust with the income payable to his daughter and her son, Jesse Carll Wright, and to the survivor of them. At the termination of the trust, i.e., upon the death of the survivor of them, the trust would terminate and the corpus paid to the issue of Jesse, then surviving, per stirpes. In default of such issue, the corpus was to be distributed to decedent’s three children in equal shares or, if they failed to survive, to their descendants “ per stirpes ”. The trust terminated. Jesse had no natural children but had adopted a child, after the testator’s death. The Surrogate (Matter of Carll, N. Y. L. J., Aug. 22, 1969, p. 11, col. 2), applying the presumption in Matter of Park (supra) and Matter of Silberman *499 (supra), held that Jesse’s adopted child was entitled to the remainder. The Appellate Division (Matter of Carll, 34 A D 2d 793 [2d Dept.], affd. 27 N Y 2d 917, supra) stating that the Park presumption was not controlling, held that the proceeding was governed by the “ precautionary addendum ” and reversed the decision of the Surrogate after it had construed the will and found no indication of an intent to include adopted children.
The trust provisions in the will in the instant case are similar to those construed in Matter of Carll (supra). Although the will herein does not provide for continued payment of income following a child’s death, it does provide for the child’s equal share of principal to be paid to his issue or, in default of issue, to the surviving children of the testator or their issue. In the instant case as in Carll, the adoption took place following the testator’s death, and there is no power of appointment granted in this will nor any other indication that the remainder is to pass, under any circumstances, outside of testator’s “ bloodlines ”.
The court is of the opinion that this proceeding is governed by the ‘ ‘ precautionary addendum ’ ’ and that since there is no indication in the will of an intent to include an adopted child, the adopted child is not deemed issue of the testator’s son Robert D. Petty. The one-fifth equal share of the principal of the trust shall be paid to and among the surviving children of the testator.